
SAUL
EWING LLP
ATTORNEYS AT LAW

GARY B. EIDELMAN
Phone: (410) 332-8975
Fax: (410) 332-8976
geidelman@saul.com
www.saul.com

January 29, 2001

**VIA HAND DELIVERY**

The Honorable Benson E. Legg
United States District Judge
United States District Court for
the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

      Re:  *American Tank Transport, Inc. v. Quality Carriers, Inc.*
           Civil Action No.: L-00-3213
           *Quality Carriers, Inc. v. American Tank Transport, Inc., et al.*
           Civil Action No.: L-00-3240

Dear Judge Legg:

      Enclosed please find an original Settlement Agreement by and between the parties in the above-referenced actions. The parties have agreed that this Settlement Agreement shall become an Order of the Court and accordingly, we are asking that you sign the Agreement on page 7. We further request that the Agreement be filed with the Clerk's office, with a copy to both myself and Mr. Ulwick.

      Thank you for your prompt attention to this matter.

                              Very truly yours,

                              Gary B. Eidelman

GBE/ral
Enclosure
cc: James P. Ulwick, Esquire

664692 1 1/29/01   BALTIMORE   BERWYN   HARRISBURG   NEW YORK   PHILADELPHIA   PRINCETON   WILMINGTON

100 South Charles Street ♦ Baltimore, MD 21201-2773 ♦ Phone: (410) 332-8600 ♦ Fax: (410) 332-8862
A DELAWARE LIMITED LIABILITY PARTNERSHIP

## SETTLEMENT AGREEMENT

Quality Carriers, Inc. ("QC"), American Tank Transport, Inc. ("ATT") and Stevens Management, LLC, ("Stevens Management")(collectively "the Parties"), do this 16th day of January, 2001 ~~December, 2000~~ agree as follows:

WHEREAS, QC and ATT entered into a contract known as the MTL Contractor Agreement (the "MTL"), on January 1, 1997;

WHEREAS, QC and Stevens Management entered into a contract known as the Management Agreement on January 1, 1997;

WHEREAS, QC ceased paying Stevens Management a portion of the contractual fee set forth in the Management Agreement beginning in or about April 2000;

WHEREAS, QC and ATT continued their business relationship until October 27, 2000, when AT sent QC a letter stating that it was terminating the relationship effectively immediately;

WHEREAS, ATT filed a lawsuit, captioned <u>American Tank Transport, Inc. v. Quality Carriers, Inc.</u>, Civil Action No.: L-00-3213, on October 27, 2000, (the "ATT Lawsuit"), and QC filed a lawsuit, captioned <u>Quality Carriers, Inc. v. American Tank Transport, Inc. and Stevens Management, L.L.C.</u>, Civil Action No.: L-00-3240, on October 30, 2000 (the "QC Lawsuit")(collectively "the Lawsuits");

WHEREAS, the QC Lawsuit requested injunctive relief enforcing the non-competition agreement contained in the MTL, and a hearing was held on this request on November 3, 2000;

656617.1 12/21/00

WHEREAS, ATT opposed the request for injunctive relief, contending inter alia, that the MTL had expired by its own terms and the non-competition agreement was otherwise unenforceable;

WHEREAS, prior to the Court's decision on QC's request for injunctive relief, the Parties entered into settlement discussions;

WHEREAS, the Parties have now reached agreement on some, but not all, of the issues between them;

WHEREAS, the Parties desire to enter into a settlement of certain issues, leaving the remaining issues to further negotiations; and

WHEREAS, the terms and conditions of this Settlement Agreement are binding only upon the Parties.

NOW, THEREFORE, in consideration of the mutual promises set forth below, the Parties agree as follows:

1.  <u>Definition of the Parties</u>:  For purposes of this Settlement Agreement, the following definitions apply:

   A.  "QC" means Quality Carriers, Inc. and its past, present and future subsidiaries, parent and sister corporations, affiliates, successors, predecessors, executors, committees, fiduciaries, trustees, employee benefit plans, plan administrators, administrators, employees, insureds and assigns, and also its and their respective past, present and future officers, directors, shareholders, investors, partners, managers, principals, employees, agents, representatives and attorneys in their personal and professional capacities.

   B.  "ATT" means American Tank Transport, Inc. and its past, present and future subsidiaries, parent and sister corporations, successors, predecessors, executors,

committees, fiduciaries, trustees, employee benefit plans, plan administrators, administrators, employees, insureds and assigns, and also its and their respective past, present and future officers, directors, shareholders, investors, managers, principals, employees, agents, representatives and attorneys in their personal and professional capacities.

    C. "Stevens Management" means Stevens Management, LLC and its past, present and future subsidiaries, parent and sister corporations, affiliates, successors, predecessors, executors, committees, fiduciaries, trustees, employee benefit plans, plan administrators, administrators, employees, insureds and assigns, and also its and their respective past, present and future officers, directors, shareholders, investors, partners, managers, principals, employees, agents, representatives and attorneys in their personal and professional capacities.

    2. <u>Dismissal of the Lawsuits</u>: The Parties agree to dismiss, with prejudice, the Lawsuits. It is expressly understood, however, that the Lawsuits do not encompass all disputes between the Parties, and all causes of action possessed by the Parties. By the way of example, QC maintains that it has a claim for monies owed by ATT, and that claim will not be dismissed or released by this Settlement Agreement, nor shall ATT's defenses or offsets to said claim be dismissed or released by this Settlement Agreement. Similarly, Stevens Management maintains that it has a claim for monies owed by QC and that claim will not be dismissed or released by this Settlement Agreement, nor shall QC's defenses or offsets to said claim be dismissed or released by this Settlement Agreement. The Parties agree that the dismissal of the Lawsuits only affect the Parties' respective claims for declaratory and injunctive relief, and QC's claims for damages as a result of ATT's alleged termination of the MTL without adequate notice, ATT's alleged manipulation of its schedule in an illegal attempt to divert

customers and revenue from QC, ATT's alleged violation of the non-competition agreement, and Stevens Management's alleged breach of fiduciary duty, for events occurring on or before the date of this Settlement Agreement.

3. <u>Non-Competition and Non-Solicitation Agreement:</u> ATT agrees that it will not directly or indirectly solicit, serve, or attempt to serve the customers listed on Exhibit A1 until June 15, 2001. ATT will not directly or indirectly solicit the customers listed on Exhibit A2 until June 15, 2001, but ATT may service such customers if the customers initiate the call without any prior contact by ATT, provided that such service shall be limited to locations listed on Exhibit A2. ATT shall not directly or indirectly solicit, serve or attempt to serve the customers listed on Exhibit A3 until June 15, 2001, except that ATT may immediately and without restriction, directly or indirectly solicit, serve or attempt to serve those customers at the locations listed on Exhibit A3. Notwithstanding the above, ATT shall be permitted to pick up loads from any location of the customers listed in Exhibits A1, A2 and/or A3 provided that the order was not placed by a customer listed in Exhibits A1, A2 and/or A3, although this limitation on ordering shall not in any way abrogate ATT's rights to solicit, serve or attempt to serve the customers at the locations listed in Exhibits A2 and A3 in the manner contemplated by this Paragraph 3.

4. <u>Applicable Law:</u> The Parties agree that this Settlement Agreement is to be interpreted under the laws of the State of Florida.

5. <u>Continuing Jurisdiction of the Court:</u> The United States District Court for the District of Maryland shall maintain jurisdiction over this Settlement Agreement.

6. <u>Notice:</u> In the event of a purported breach of this Settlement Agreement, the non-breaching party shall give written notice of the breach to the breaching party. The

breaching party shall have one (1) business day in which to notify the non-breaching party of its intended method of correction and/or correct or explain the circumstances causing the purported breach. The parties agree to act in good faith to utilize the notice provision set forth in this Paragraph 8 to resolve any disputes that may arise under this Settlement Agreement. The notice provided for herein may be delivered or sent by facsimile, prepaid overnight courier, or E-Mail to the parties, with copies to counsel, at the following addresses:

To ATT and Stevens Management:

>American Tank Transport, Inc.
>6317 Macaw Court
>Elkridge, Maryland 21227
>Attn: William J. Stevens
>Telephone: (410) 796-9300 ext. 17
>Facsimile: (410) 796-9307
>E-Mail: bstevens@gomanfredi.com

With copy to:

>Gary B. Eidelman, Esquire
>Saul Ewing LLP
>100 South Charles Street
>Baltimore, Maryland 21201
>Telephone: (410) 332-8975
>Facsimile: (410) 332-8976
>E-Mail: geidelman@saul.com

To QC:

    Quality Carriers, Inc.
    3802 Corporex Drive
    Tampa, Florida 33619
    Attn: Robert Kasak, Esquire
    Telephone: (800) 282-2031 ext. 7309
    Facsimile: (813) 630-9567
    E-Mail: rkasak@mtlinc.com

With copy to:

    James P. Ulwick, Esquire
    Kramon & Graham, P.A.
    One South Street
    Suite 2600
    Baltimore, Maryland 21202
    Telephone: (410) 347-7426
    Facsimile: (410) 539-1269
    E-Mail: julwick@kg-law.com

Such notice shall be deemed given in the case of notice by overnight courier, the next day or the day designated for delivery or, in the case of notice by facsimile or E-Mail, the date upon which the transmitting party received confirmation of receipt by facsimile, E-Mail, telephone or otherwise.

    7.    <u>Injunctive Relief</u>: In the event that the breach is not cured or corrected by the notice procedure set forth in Paragraph 8, the Parties agree that uncured violations of this Agreement will cause irreparable harm to the injured Party, and therefore consent to the applicability of injunctive relief to redress violations of this Settlement Agreement.

    8.    <u>Non-Disparagement Agreement</u>: The Parties agree that they will refrain from making bad faith, disparaging remarks about each other. The Parties remain free, however, to compete fairly for business, (as limited by Paragraph 3 above), and may within that context

compare quality of service, dependability, price, timeliness of response, and any other factor commonly used to fairly and legitimately compete for business.

9. <u>No Party is a Drafter</u>: The Parties agree that ATT, Stevens Management and QC have contributed to the drafting of the Settlement Agreement, so that none should be deemed to be the drafter.

10. <u>Further Negotiations</u>: The Parties will continue to negotiate in good faith over the monetary issues arising from the business relationships between QC and ATT and QC and Stevens Management. The Parties reserve the right to litigate such issues, if necessary, subject to the restrictions set forth in Paragraphs 4 & 5.

QUALITY CARRIERS, INC.

By: _____

AMERICAN TANK TRANSPORT, INC.

By: _____

STEVENS MANAGEMENT, LLC.

By: _____

SO ORDERED this 1st day of February, 2001.

_____
Benson E. Legg
United States District Judge

EXHIBIT A1 TO THE SETTLEMENT AGREEMENT BY AND BETWEEN
QUALITY CARRIERS, INC., AMERICAN TANK TRANSPORT, INC.
AND STEVENS MANAGEMENT, LLC.


**Name of Customer**

20/10 PRODUCTS
AK STEEL
ALCAN RUBBER & CHEMICAL
AMALGAMET CANADA
AT & T CHEMICAL, INC.
AUSTIN URETHANE
BALTIMORE MARINE INDUSTRIES, INC.
BALTIMORE RESCO
BETZDEARBORN CANADA, INC.
BETZDEARBORN, INC.
BP AMOCO
CARUS CHEMICAL
CASS LOGISTICS, INC.
CHEM MET CO.
CHEMICAL LEAMAN
CHEMICAL LEAMAN TANK LINES
CHEMICAL SPECIALTIES
CHESAPEAKE
CHESAPEAKE CORP.
CIBA GEIGY
CONDEA VISTA
CONGOLEUM CORP.
CORNING GLASS
CORNING, INC.
DELMARVA
DOW CHEMICAL
DUPONT CANADA, INC.
ECOLAB LTD
E.I. DUPONT (FRONT ROYAL RESIN FACILITY ONLY)
ENSCO
ESSROC MATERIAL
FMC (EXCEPT THAT ATT MAY HAUL HYDROCHLORIC ACID (HCL) FOR THIS CUSTOMER)
GFI CHEMICALS, INC.
GIANT RESOURCE RECOVERY
GLOBAL TANK & TRAILER SALES
HYDRITE CHEMICAL

-2-

IMATION ENTERPRISES
INTERSTATE CHEMICAL
JM HUBER COMPANY
JOHNSON & JOHNSON CPI
JONES CHEMICAL (NEW YORK AND CHARLOTTE FACILITIES ONLY)
LEE TENNIS PRODUCTS
LIGNOTECH USA
NIAGARA NATIONAL
OHIO POLYCHEMICAL
OSRAM SYLVANIA PRODUCTS
PB & S CHEMICAL CO.
PETRO CLEAN
POLAROID CORP.
PQ CORP.
QUANDRA CORP.
RAYTHEON ENGINEERS & CONSTRUCTORS
REICHHOLD CHEMICAL
RHODIA, INC.
RHONE-POULENC NORTH AMERICA CHEMICAL
SOUTH CHEM
SOUTH CHEM, INC.
SPECTRATECH INTERNATIONAL, INC
STERLING FIBERS
SURPASS CHEMICAL
TETRA CHEMICALS
TEXTILE CHEMICAL
TEXTILE RUBBER & CHEMICAL
TOWNSEND FOODS, INC.
UNICHEMA
UPPER OCCOQUAN
VECKRIDGE CHEMICAL, INC.
VELSICOL CHEMICAL
WASHINGTON MILLS ELECTRIC MINERAL CORP.
WASTETRON OF MARYLAND, INC.
WILLIAMETTE INDUSTRIES
WITCO CORP.
WORLD KITCHEN, INC.

**EXHIBIT A2 TO THE SETTLEMENT AGREEMENT BY AND BETWEEN QUALITY CARRIERS, INC., AMERICAN TANK TRANSPORT, INC. AND STEVENS MANAGEMENT, LLC.**

| Customer Name | Location |
|---|---|
| UNILEVER HPC USA | BALTIMORE |

# EXHIBIT A3 TO THE SETTLEMENT AGREEMENT BY AND BETWEEN QUALITY CARRIERS, INC., AMERICAN TANK TRANSPORT, INC. AND STEVENS MANAGEMENT, LLC.

| Customer Name | Location |
| --- | --- |
| CHEMICALS UNLIMITED | BALTIMORE, MARYLAND |
| GOLDSCHMIDT CHEMICAL | HOPEWELL, VIRGINIA |
| HYDRO AGRI | BALTIMORE, MARYLAND |
| NATIONAL SOLUTIONS, INC. | BALTIMORE, MARYLAND |
| PENCCO, INC. | BALTIMORE, MARYLAND |
| RAIL SERVICES, INC. | BALTIMORE, MARYLAND |
| SAFETY KLEEN | BALTIMORE, MARYLAND |
| SHERWIN WILLIAMS | BALTIMORE, MARYLAND |